**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| GREGORY W., | ) | |
| | ) | |
| Plaintiff, | ) | No. 19 cv 6848 |
| | ) | |
| v. | ) | Magistrate Judge Susan E. Cox |
| | ) | |
| ANDREW M. SAUL, Commissioner of the | ) | |
| Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Gregory W.[1] appeals the decision of the Commissioner of the Social Security Administration ("Commissioner") denying him disability benefits. Plaintiff has filed a motion for summary judgment [14]; the Commissioner has filed a cross-motion for summary judgment [dkt. 20]. As detailed below, the Court grants Plaintiff's motion for summary judgment [dkt. 14], denies the Commissioner's motion for summary judgment [dkt. 20], and remands this matter for further proceedings consistent with this Memorandum Opinion and Order.

**I.    Background**

**a.    Procedural History**

In April 2016, Plaintiff protectively filed for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 416(i), 423(d), alleging disability beginning July 31, 2015. [Administrative Record ("R.") 174-82.] After his application was denied initially and upon reconsideration, Plaintiff requested an administrative hearing. [R. 104.] In April 2018, Plaintiff appeared with counsel and testified at a hearing before Administrative Law Judge ("ALJ") William J. Mackowiak. [R. 41-69.] A vocational expert ("VE") also testified. *Id.* On August 30, 2018, the ALJ determined that

---

[1]    In accordance with Northern District of Illinois Internal Operating Procedure 22, the Court refers to Plaintiff only by his first name and the first initial of his last name(s).

Plaintiff was not disabled. [R. 23-33.] On April 18, 2018, after a review of the ALJ's decision, the Appeals Council issued a decision affirming that Plaintiff had not been under a disability from his alleged onset date to his date last insured. [R. 1-6.] Thus, the Decision of the Appeals Council is the final decision of the Commissioner. Plaintiff filed an action in this court on October 16, 2019, seeking review of the Commissioner's decision.

**b.    Relevant Background**

Plaintiff was born in 1957 and was 58 years old on his alleged disability onset date. [R. 32.] Plaintiff was a prominent agricultural commodities forecaster/analyst, with a 37-year earnings history. [R. 42, 61, 68.] From 2010 until his alleged disability date, Plaintiff attempted to work from home, but his mental symptoms worsened to the point he found he was no longer able to perform his job; he has not worked since July 31, 2015. [R. 46-47.]

From December 18, 2014 through December 23, 2014, Plaintiff was hospitalized at Hinsdale Hospital due to an acute exacerbation of major depression with vegetative symptoms. [R. 300-42.] The admission history reflects that he was experiencing worsening depressive symptoms for three months, sleeping/staying in bed 18-20 hours a day, had low energy, low motivation, increased anxiety, and difficulties with concentration and attention. [R. 310-15.] Dr. Richard Ready, MD, who performed a psychiatric evaluation, noted that Plaintiff had been treating with his primary care physician for depression and had a past history of attention-deficit/hyperactivity disorder ("ADHD"). [R. 315-16.] After five days of intensive inpatient psychiatric treatment including pharmacological treatment, group, occupational, and family therapy, Plaintiff's symptoms improved; he was discharged with a diagnosis of major depression, history of ADHD, and a GAF score of 45, indicating serious functional impairments.[2]

---

[2]    Although the Global Assessment of Functioning ("GAF") is not used in the most recent version of the Diagnostic and Statistical Manual of Mental Disorders ("DSM V"), it was used in the previous version of that text ("DSM IV"), and is often relied on by doctors, ALJs, and judges in social security cases. *See Steele v. Colvin*, 2015 WL 7180092 at *1 (N.D. Ill. Nov. 16, 2015). The lower the GAF score, the greater the degree of impairment. *Id.* A score between 41 and 50 indicates "serious symptoms" such as suicidal ideation, severe obsessional rituals, or "any serious impairment in social, occupational, or school functioning (*e.g.*, no friends, unable to keep a job, cannot work)." A score between 51

[R. 308.] His discharge medications included Klonopin and for anxiety, Bupropion and Prozac for depression, Adderall for ADHD, and Lamotrigine for bipolar disorder. [R. 307.]

Plaintiff followed up with his primary care physician, Dr. Farah Khan, MD, FACP, on December 30, 2014. [R. 481-82, 489.] He recounted that prior to admission, he was sleeping thirteen hours a day, and wasn't motivated to work, shower, or leave the house. *Id.* He described feeling better since being discharged. *Id.* However, Plaintiff saw Dr. Khan on February 23, 2015, complaining that his symptoms had returned. [R. 483-84.] He was again sleeping excessively and was unable to focus on work. [R. 483.] Dr. Khan encouraged him to go back to Hinsdale Hospital or be admitted to another hospital, but Plaintiff refused. [R. 484.] Plaintiff again saw Dr. Khan (for 45+ minutes) on June 19, 2015 for counseling on depression and anxiety, and medication adjustment. [R. 485-86.]

Dr. Lee Weiss, MD, a psychiatrist with Pillars Community Services, evaluated Plaintiff on June 27, 2016 and noted his history of depression, anxiety, panic attacks, and excessive sleep. [R. 517-20.] He diagnosed Plaintiff with Bipolar Disorder II. [R. 519.] On August 22, 2016, Dr. Weiss's notes reflect that Plaintiff continued to have a distorted sleep pattern and was confused as to what day of the week it was. [R. 517.] William Meyer, LCPC, also of Pillars Community Services, saw Plaintiff on October 26, 2016 for what Plaintiff described as a precipitous decline in his ability to remember things. [R. 534-37.] Plaintiff reported being distracted, having difficulties with memory, getting lost, and not being able to write and speak as he could before. [R. 538.]

Plaintiff saw a new primary care physician, Dr. Jennifer Swoyer, DO, on November 3, 2016 and complained of depression, slow speech and memory, and avoidance of social situations. [R. 552.] Dr. Swoyer noted that Plaintiff was lethargic and had an abnormal affect. *Id.* Plaintiff returned to Dr. Swoyer on November 17, 2016 reporting continued depression, sleep disturbance, and fatigue. [R. 548-50.] Dr.

---

and 60 represents "moderate symptoms" or "moderate difficulty in social, occupational, or school functioning." *Id.* Anything above 60 would indicate mild symptoms. *Id.*

Swoyer noted that Plaintiff had a flat affect and difficulty functioning. *Id.* She diagnosed him with ADHD with "excessive cognitive slowing likely due to medications," anxiety, and single major depressive episode. [R. 550.] Dr. Melanie Terbovic, at the request of Dr. Weiss, performed a psychological evaluation of Plaintiff's cognitive functioning on based upon a series of testing done over a four-day period between December 13, 2016 and December 29, 2016. (R. 522). Plaintiff informed Dr. Terbovic he could no longer perform simple tasks, had difficulty driving, required increased time to remember things, could no longer read, and was unable to follow the plot of television shows. *Id.* Dr. Terbovic administered Wechsler Adult Intelligence Scale IV testing, which provides composite index scores representing intellectual functioning in specific composite areas. [R. 523.] In the Processing Speed Index, Plaintiff placed in the 3rd percentile, suggestive of difficulties with short-term memory, attention, and visual coordination. [R. 524.] Plaintiff placed in the 16th percentile in the Visual Working Memory Index, suggesting a moderate visual working memory index. [R. 525.] In the Delayed Memory Index, which measures the ability to recall information after a 20- to 30-minute delay, Plaintiff placed in the 12th percentile, associated with patients who have moderate delayed memory difficulties. [R. 525.]

At the April 30, 2018 Administrative Hearing before the ALJ, Plaintiff testified he had trouble making a living after 2010. [R. 47.] He tried working from home but began sleeping constantly, sometimes for 36 hours straight. [R. 48.] He would be sleeping when his wife left for work in the morning and still be sleeping when she returned home. [R. 49.] His primary care physician prescribed antidepressants, but they were not effective. [R. 48.] He had trouble leaving his house and was unable to sustain focus. [R. 49-50.] If he did go to the store, he would forget to take money. [R. 49.] Once he got to the store, he would be unable to remember the item he wanted to buy (*e.g.*, he would have to ask someone the name of the "round pasta" upon forgetting the word "ravioli"), or would accidentally bring multiples of items to the register. [R. 49-50.]

Plaintiff testified that he has gone a month without changing his clothes or bathing. [R. 52.] He

no longer reads because he cannot follow the plot of a story or book, but used to be a voracious reader. [R. 55.] He watches television occasionally, but needs to ask his wife about the characters' relationships with one another. *Id.* He has trouble being around people he doesn't know and experiences a great deal of anxiety. [R. 49-50.] Over the past several years he has not attended a wedding, funeral, or wake (even of people he loves) because these events strike terror, are uncomfortable, and he often loses his train of thought. [R. 52.] A few years before the Administrative Hearing, Plaintiff was able to pull himself together to drop his daughter off at college in a nearby city, but it just "drain[ed] him" and he slept for "a very, very long time" afterward. [R. 53-54.] He does not socialize with friends; he is able to speak to people on the telephone but cannot go to a restaurant, church, or movie theater. [R. 54.]

Plaintiff completed a Function Report on May 2, 2016, describing a diminished ability to function in a personal and professional capacity, short and long term memory loss, confusion, and anxiety that limited his ability to interact with family and friends. [R. 223-31 at 223.] Plaintiff indicated that he bathes infrequently and has become indifferent to people thinking he smells or appears shabby. [R. 224.] He reported changing clothes only about once a week, and reported bathing and shaving with the same frequency. *Id.* He stated that he goes outside only two to three times a week to get a small amount of groceries, driving infrequently and only for short distances, and he typically only remains out of the house for 30 minutes at a time. [R. 226.] He tries to do small tasks for his wife and daughter, but this is very limited, and he infrequently cares for his dog and birds [R. 224.] Prior to his December 2014 hospitalization and afterwards, he experienced increased dysfunction in mental health; loss of short- and long-term memory; inability to process information (including an inability to process and track monetary or financial matters), concentrate, and follow directions. (R. 227, 230). In a second Function Report from a few months later (August 30, 2016), Plaintiff stated that it was not infrequent for him to wear the same clothes for three weeks, not bathe for two or three weeks, go without a haircut for three to four months, and to soil his pants occasionally. [R. 261.] He is able to prepare very limited meals for

himself including sandwiches, frozen dinners, or can of soup or chili (although he had trouble making mac & cheese and had to throw it out). [R. 262, 228.] He can only pay attention for five minutes before needing to refocus. [R. 265.]

At the request of the Social Security Administration, Plaintiff's wife of 19 years completed a Third Party Function Report in August of 2016. [R. 253.] She reported that Plaintiff isolates himself and avoids interpersonal relationships. [R. 253-54.] She needs to remind Plaintiff to take a bath and change his clothes. [R. 254-55.] She reports that Plaintiff's activities of daily living include mowing the lawn, doing the dishes, and laundry, each taking a couple hours per week. [R. 255.] She indicated that Plaintiff leaves the house a couple times a week, but is never gone for more than an hour. *Id.* The primary caregiving responsibility for the couple's daughter has fallen to Plaintiff's wife, and she reported that since Plaintiff's profound behavioral changes, he has virtually no relationship with the couple's daughter, which causes a lot of resentment between them. [R. 254, 259.]

Finally, during his initial interview with the Social Security Administration on April 5, 2016, the interviewer noted that Plaintiff was disorganized, misplaced documents he had just taken out of an envelope he was carrying, and did not notice documents that were right in front of him. [R. 202.]

### c. The ALJ's Decision

On August 30, 2018, the ALJ issued a written decision denying Plaintiff disability benefits. [R. 23-33.] At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of July 31, 2015 through his date last insured of December 31, 2015. [R. 25.] At Step Two, the ALJ found that Plaintiff had the severe impairments of degenerative disc disease and affective disorder. *Id.* At Step Three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments of 20 C.F.R. Part 404, Subpart P, App'x 1. [R. 25-27.] Before Step Four, the ALJ found that Plaintiff

had the residual functional capacity ("RFC")[3] to perform medium work with the following limitations: avoidance of hazards; no work requiring more than simple workplace judgment; work must be limited to simple workplace decisions, simple routine repetitive tasks, few if any workplace changes and no rapid production quotas; no interaction with the public and only brief and superficial interaction with coworkers and supervisors. [R. 27-28.] At Step Four, the ALJ determined that Plaintiff was not capable of performing his past relevant work as an Economist (Agriculture and Commodities Analyst). [R. 31.] Step Five, the ALJ found Plaintiff was capable of performing other jobs existing in significant numbers in the national economy. [R. 32.] Because of these determinations, the ALJ found Plaintiff not disabled under the Act. [R. 33.]

## II.    Social Security Regulations and Standard of Review

The Social Security Act requires all applicants to prove they are disabled as of their date last insured to be eligible for disability insurance benefits. *Nina Joyce H. v. Saul*, 2020 WL 212771, at *7 (N.D. Ill. Jan. 14, 2020) (citing *Shideler v. Astrue*, 688 F.3d 306, 312 (7th Cir. 2012)). ALJs are required to follow a sequential five-step test to assess whether a claimant is legally disabled. The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; and (3) whether the severe impairment meets or equals one considered conclusively disabling such that the claimant is impeded from performing basic work-related activities. 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920(a)(4)(i)-(v). If the impairment(s) does meet or equal this standard, the inquiry is over and the claimant is disabled. 20 C.F.R. § 416.920(a)(4). If not, the evaluation continues and the ALJ must determine (4) whether the claimant is capable of performing his past relevant work. *Cannon v. Harris*, 651 F.2d 513, 517 (7th Cir. 1981). If not, the ALJ must (5) consider the claimant's age, education, and prior work experience and evaluate whether he is able to engage in another type of work existing in a significant number of jobs in the national economy. *Id.* At the fourth and fifth steps of the

---

[3]    RFC is defined as the most one can do despite one's impairments. 20 C.F.R. §§ 404.1545, 416.945.

inquiry, the ALJ is required to evaluate the claimant's RFC in calculating which work-related activities he is capable of performing given his limitations. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004). In the final step, the burden shifts to the Commissioner to show that there are jobs that the claimant is able to perform, in which case a finding of not disabled is due. *Smith v. Schweiker*, 735 F.2d 267, 270 (7th Cir. 1984).

In disability insurance benefits cases, a court's scope of review is limited to deciding whether the final decision of the Commissioner of Social Security is based upon substantial evidence and the proper legal criteria. *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004). Substantial evidence exists when a "reasonable mind might accept [the evidence] as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). While reviewing a commissioner's decision, the Court may not "reweigh evidence, resolve conflicts in the record, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Young*, 362 F.3d at 1001. Although the Court reviews the ALJ's decision deferentially, the ALJ must nevertheless "build an accurate and logical bridge" between the evidence and his conclusion. *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) (internal citation omitted). The Court cannot let the Commissioner's decision stand if the decision lacks sufficient evidentiary support, an adequate discussion of the issues, or is undermined by legal error. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003); *see also*, 42 U.S.C.§ 405(g).

## III. Discussion

Among other things, Plaintiff asserts the ALJ erred with respect to off-task time, and that this is grounds for remand. The Court agrees.

Here, the ALJ found Plaintiff had moderate limitations in concentration, persistence, and maintaining pace, and the ALJ specifically highlighted Plaintiff's reported difficulties concentrating, including that he could only pay attention for 5 minutes at a time, did not finish tasks once he started

them, and could not follow the written word. [R. 26.] Despite this, the ALJ found Plaintiff could perform all work at the medium exertional level, except that he is limited to simple, routine, repetitive tasks in jobs with few if any workplace changes, no public contact, no more than occasional contact with coworkers and supervisors, and no team work. [R. 27-28.] Yet the ALJ included no off-task finding in the RFC, despite querying the VE about the same.

It is a long-held canon of Social Security law that "[a]n administrative law judge may not ask a vocational expert a hypothetical question based on substantial evidence and then ignore unfavorable answers," *Campbell v. Bowen*, 822 F.2d 1518, 1523 (10th Cir. 1987). While the Court does not presume this intentionality here, despite specifically contemplating the issue of off-task time here, the ALJ then failed to come to any conclusion regarding the off-task time he asked the VE to consider, which is the antithesis of the logical bridge required of ALJs. While it is true the ALJ included no off-task finding in his decision, in this case the ALJ pointedly solicited from the VE his opinions concerning Plaintiff's off-task time (pegging that figure at 15% off-task), meaning the ALJ *did* specifically consider this issue. [R. 66.] *Kukec v. Berryhill*, 2017 WL 5191872, at *3 (N.D. Ill. Nov. 9, 2017) (finding that ALJ did consider off-task time specifically because the VE was asked, within hypothetical addressing claimant's other limitations supported by evidence, to consider off-task time in rendering opinions); *accord Sayles v. Barnhart*, 2001 WL 1568850, at *9 (N.D. Ill. Dec. 7, 2001); *Hampton-Lewis v. Berryhill*, 2018 WL 6242463, at *7 (N.D. Ind. Nov. 29, 2018); *Diaz v. Berryhill*, 2018 WL 4627218, at *8 (N.D. Ind. Sept. 27, 2018); *Williams v. Colvin*, 2016 WL 836964, at *4 (E.D. La. Feb. 17, 2016).

The Court cannot consider this a harmless error, particularly because the VE testified Plaintiff would be unemployable under a hypothetical where he would be off task more than 10% of the time [R 66.] Although the ALJ did not explain what evidence necessitated such a question to the VE, it nonetheless appears the ALJ had reason to believe Plaintiff might be off task at least 15% of the time, or there would be no reason to have posed this hypothetical to the VE. While an ALJ is not bound to

any hypothetical, it is clear here the ALJ considered the issue of off-task time, but then failed to provide any analysis of whether, for example, Plaintiff was limited by any off-task allowances and, if, so, for how long. *See*, *e.g.*, *Washington v. Colvin*, 2013 WL 1903247, at *11 (N.D. Ill. May 7, 2013) (reversing for failure to provide logical bridge as to percentage of time Plaintiff would be off task). This is error, as there is no logical bridge to follow to any conclusion about off-task time. *See Steele v. Barnhart*, 290 F.3d at 941. In light of the medical background of this case (both pre- and post-DLI) noted by both parties, this is not an insignificant issue for the ALJ to have raised and then discarded, and the Court remands on this basis.

Additionally, while the Court has not analyzed Plaintiff's arguments on the following point with any robustness (and does not specifically remand on this basis), the Court cautions the ALJ on remand to carefully analyze any limitations in concentration, persistence, or pace to ensure they meet precedent. The Seventh Circuit has repeatedly found that requiring a claimant to perform only "simple" work— whether in the form of tasks performed, judgments and decisions made, or instructions followed— does not account for moderate limitations in concentration, persistence, or pace. *See Winsted v. Berryhill*, 923 F.3d 472, 476-77 (7th Cir.); *Moreno v. Berryhill*, 882 F.3d 722, 730 (7th Cir. 2018); *Varga v. Colvin*, 794 F.3d 809, 814 (7th Cir. 2015); *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618, 620-21 (7th Cir. 2010); *Mischler*, 2019 WL 1299948, at *5; *Paul v. Berryhill*, 760 F. App'x 460, 463-65 (7th Cir. 2019); *Radosevich v. Berryhill*, 759 F. App'x 492, 494-95 (7th Cir. 2019); *see also Lear v. Berryhill*, 2018 WL 1225046, at *7 (N.D. Ind. Mar. 9, 2018) (limiting claimant to "simple, routine work and to no more than average production requirements" does not "adequately capture moderate limitations in concentration, persistence, and pace" within Seventh Circuit); *Ingle v. Colvin*, 2016 WL 270006, at *8-9 (S.D. Ill. Jan. 22, 2016) (same). This is so because an individual's ability to perform simple work is distinct from his ability to "maintain the concentration and focus needed to sustain her performance of" tasks for an "extended period" of time. *See Paul*, 760 F. App'x at 465; *O'Connor-Spinner*, 627 F.3d at 620; *Mischler*, 2019 WL 1299948, at *5

("A task can be simple, but a person with a poor attention span may still become distracted and stop working."). As the ALJ is undoubtedly aware, restricting a person to simple routine tasks is unrelated to the question of whether an individual with or difficulties with concentration, persistence, and pace can perform such work. *Varga*, 794 F.3d at 814.

Finally, while the Court has remanded on the not-insignificant issue of off-task time, this does not mean Plaintiff may not have an uphill battle demonstrating disability in the extremely short 5-month period from his date last insured to the expiration of his disability benefits (July 31, 2015 to December 31, 2015), the adjudication period during which he must show he was disabled. *See Nina Joyce H.*, 2020 WL 212771, at *7 (citing *Shideler*, 688 F.3d at 312, for proposition that Plaintiff must show disability by their DLI). Although he has plenty of them, Plaintiff's post-DLI medical records may only get him so far in this respect. *Million v. Astrue*, 260 F. App'x 918, 922 (7th Cir. 2008) (post-DLI medical records relevant only to degree they shed light on impairments and disabilities from the relevant insured period).

## IV. Conclusion

For the foregoing reasons, the Court must remand for proceedings consistent with this Memorandum Opinion and Order. Plaintiff's motion for summary judgment [dkt. 14] is granted; the Commissioner's motion for summary judgment [dkt. 20] is denied.


Entered: 8/18/2020

_____
Susan E. Cox,
United States Magistrate Judge